*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WHITE/PARSONS, Minors.

UNPUBLISHED
February 09, 2026
9:48 AM

Nos. 376337; 376338; 376545
Calhoun Circuit Court
Family Division
LC No. 2023-001085-NA

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father and respondent-mother appeal as of right the trial court's order terminating their respective parental rights to the minor children. In Docket No. 376337, respondent-mother's parental rights to MW were terminated under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (3)(c)(*ii*) (failure to rectify other conditions), and (3)(j) (children will be harmed if returned to parent). In Docket No. 376338, respondent-mother's parental rights to MP were likewise terminated under MCL 712A.19b(3)(c)(*i*), (3)(c)(*ii*), and (3)(j). In Docket No. 376545, respondent-father's parental rights to MP were terminated under MCL 712A.19b(3)(a)(*ii*) (desertion of the child for 91 or more days), (3)(c)(*i*), (3)(c)(*ii*), and (3)(j).

Respondent-mother argues that the trial court erred by finding that a statutory ground for termination existed, that termination was in the children's best interests, and that the Department of Health and Human Services (DHHS) made reasonable efforts to reunify the family. Respondent-father argues that the trial court erred by finding that a statutory ground for termination existed.[2] We affirm.

---

[1] *In re M White Minor*, unpublished order of the Court of Appeals, entered July 29, 2025 (Docket Nos. 376337, 376338, and 376545).

[2] Respondent-father does not raise any challenges to the trial court's conclusion that terminating respondent-father's parental rights was in MP's best interests. Nonetheless, we have reviewed the

-1-

## I. FACTS

In April 2023, the DHHS filed a petition regarding MW, the child of respondent-mother and Alvin White.[3] The DHHS requested that the trial court terminate White's parental rights on the basis of suspected, nonaccidental child abuse. MW was hospitalized and diagnosed with a suspected seizure, subdural hematomas, and bilateral retinal hemorrhages. White was the sole caregiver at the time of MW's injuries. The trial court placed MW with respondent-mother. Respondent-mother was ordered to not allow unsupervised parenting time with White unless authorized by the trial court and arranged by the DHHS.

On July 20, 2023, the DHHS filed a supplemental petition requesting removal of MW from respondent-mother, and filed a separate petition requesting the removal of MP from respondent-mother and respondent-father. On the same day the petitions were filed, the trial court held a preliminary hearing regarding MW and MP with respect to respondent-mother.[4] The DHHS alleged that respondent-mother faced eviction for nonpayment of rent, lost her job, and had no income. The DHHS further alleged that respondent-mother had multiple warrants out for her arrest for reckless driving and driving on a suspended license. In addition, the DHHS alleged that respondent-mother canceled or missed multiple medical appointments for MW and MP. Further, the DHHS alleged that despite respondent-mother's knowledge of the court order barring White from unsupervised contact with MW, on July 18, 2023, respondent-mother was pulled over in a traffic stop, and White was a passenger in the car holding MW in his hands with no car seat. As a result, the DHHS planned to place MW and MP with their maternal grandmother.

At the continued preliminary hearing on August 28, 2023, respondent-mother pleaded no-contest to the allegations in the petition, including admitting that White severely injured MW, the allegations regarding the traffic stop, and the allegations that MW and MP missed multiple medical appointments. The trial court found that the allegations in the petition were true by a preponderance of the evidence and took jurisdiction over MW and MP with respect to respondent-mother.

On September 12, 2023, a combined adjudication trial and disposition hearing was held regarding respondent-father with respect to MP. The DHHS's petition alleged that respondent-father was on felony probation for weapons charges, was required to submit to drug screens, and did not have employment or stable housing. The trial court found that the allegations in the petition were true by a preponderance of the evidence and took jurisdiction over MP with respect to respondent-father on the basis of respondent-father's failure to provide support and an unfit home environment by reason of neglect, cruelty, drunkenness, criminality, or depravity.

Both respondent-mother and respondent-father were ordered to comply with, and benefit from, their individual Parent Agency Treatment Plans (PATP). Respondent-mother's PATP

---

record and find no errors warranting reversal. See *In re Olive/Metts Minors*, 297 Mich App 35, 40-42; 823 NW2d 144 (2012).

[3] The trial court also terminated the parental rights of White, but he has not appealed that ruling and is not a party to this appeal.

[4] The DHHS could not locate respondent-father at the time of this preliminary hearing.

required her to maintain employment and stable housing, complete a psychological evaluation, follow a safety plan regarding abuse and neglect, complete parenting training, utilize new parenting skills during visitation, complete budgeting classes, complete domestic-violence classes, and comply with therapy. Over the course of the case, respondent-mother began various services but struggled to complete them. Respondent-mother maintained her relationship with White, and the DHHS caseworker Deniel Enos discovered instances of domestic violence between the pair and violations of the safety plan.

As part of his PATP, respondent-father was required to complete a psychological evaluation, individual counseling, parenting classes, and negative drug screenings; attend supported visitations; and obtain employment. Over the course of the case, respondent-father participated in some services but effectively disappeared from the case from February 2024 until early 2025 when he was arrested in Calhoun County and charged with homicide.

The trial court held a termination hearing in May 2025 that was continued in June 2025. At the termination hearing, Enos testified that respondent-mother failed or struggled to comply with her PATP because she allowed White to attend unsupervised parenting time and enter her home, struggled to maintain housing and employment, did not consistently attend counseling, was not honest with her therapist about her relationship with White, did not complete a one-on-one budgeting class to which she was referred, did not complete any of the domestic-violence programs to which she was referred, and displayed a decline in parenting skills at visitations over the course of the case.

Enos further testified that respondent-father failed to comply with his PATP because he did not see MP for approximately a year between February 2024 and February 2025, did not participate in supported visitations or a fatherhood program, did not complete the written parenting chapters provided by the DHHS, failed or missed every weekly drug test that he was required to complete, failed to secure housing and employment, and declined to participate in services offered by the jail while incarcerated because he believed that he did not need them.

The trial court found that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*), (3)(c)(*ii*), and (3)(j) with respect to respondent-mother. The trial court found that respondent-mother was not credible, highlighting respondent-mother's denial of her relationship with White despite her pregnancy, contact history, and financially supporting White while he was incarcerated. The trial court found that respondent-mother did not benefit from the parenting-skills classes, despite completing them, because she regularly ignored the children during visitations and exposed the children to White, someone with a history of criminality, due to her continued relationship with him. The trial court also found that respondent-mother did not have stable housing and did not address her mental-health issues because she did not regularly attend counseling and she lied to her counselor about her relationship with White.[5]

---

[5] Respondent-mother consistently denied the nature of her relationship with White despite giving birth to a third child (her second with White) on March 2, 2024. In addition, respondent-mother was pregnant with her fourth child (her third with White) at the time of the termination hearing.

The trial court also found that statutory grounds for termination existed under MCL 712A.19b(3)(a)(*ii*), (3)(c)(*i*), (3)(c)(*ii*), and (3)(j) with respect to respondent-father and MP. The trial court did not find respondent-father to be credible. The trial court noted the conflicting testimony regarding respondent-father's living situation at his grandmother's house and the lack of verification of his testimony regarding his employment. The court found that respondent-father attended some visits with MP, but regularly appeared late. The court stated the respondent-father stopped services and visitations for a year. The court also found that while respondent-father was required to attend weekly drug screens, he only completed three screens and tested positive for marijuana, cocaine, and benzodiazepines. Respondent-father continued his criminality and would have to address federal charges and state murder charges.

Finally, the trial court found that termination of respondent-mother and respondent-father's parental rights was in the best interests of MW and MP despite the relative placement with their maternal grandmother. Respondent-mother and respondent-father now appeal.

## II. STATUTORY GROUNDS FOR TERMINATION

Both respondents argue that the trial court erred by finding that there were statutory grounds to terminate their parental rights.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). This Court reviews for clear error a trial court's finding that statutory grounds exist for termination. *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 272-273; 976 NW2d 44 (2021) (quotation marks and citation omitted). This Court need not consider additional grounds for the trial court's decision if termination was supported by at least one statutory ground. *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334.

## A. RESPONDENT-MOTHER

Respondent-mother argues that the trial court erred by finding that statutory grounds for termination of her parental rights existed under MCL 712A.19b(3)(c)(*i*), (3)(c)(*ii*), and (3)(j). We disagree.

MCL 712A.19b(3) provides:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

-4-

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination of parental rights is proper under MCL 712.A19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the respondent] had not accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and that the respondent would not be able to rectify those conditions "within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*). To the extent that a service plan is "specifically targeted to address the primary basis for the adjudication in [the] matter," the respondent's "insufficient compliance with and benefit from the services provided by the [DHHS]" justify termination of the respondent's parental rights under MCL 712A.19b(3)(c)(*i*). *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Further, "minimal progress" in addressing the requirements of a service plan supports a finding that the respondent will not accomplish the purpose of the service plan within a "reasonable time." *In re Smith*, 324 Mich App 28, 49; 919 NW2d 427 (2018).

It is undisputed that more than 182 days had elapsed since the initial dispositional order in this case. MCL 712A.19b(3)(c). The initial dispositional orders were entered on September 12, 2023. The hearing to terminate respondents' parental rights was held on May 21, 2025, and June 11, 2025. The order terminating respondent-mother's and respondent-father's parental rights was entered on June 11, 2025, 638 days after the initial dispositional orders were entered.

The conditions that led to respondent-mother's adjudication were respondent-mother's failure to protect her children by violating the established safety plan, her lack of parenting skills, and medical neglect. To rectify these conditions, respondent-mother was required to complete a psychological evaluation; follow a safety plan regarding abuse and neglect; identify potential harmful intimate partners; complete a parenting skills program, budgeting classes, domestic-violence classes, and therapy; utilize increased parenting skills; and maintain stable employment and housing.

At the termination hearing, Enos testified that respondent-mother had completed her psychological evaluation, but she violated the safety plan by allowing White to attend unsupervised parenting time and enter respondent-mother's home. Though respondent-mother had housing, she moved multiple times during the case, and at least one instance was because of lease violations. Similarly, though she was employed, respondent-mother struggled to maintain employment and to provide for her children's needs despite providing financial assistance to White so that she could communicate with him while he was incarcerated.[6] Respondent-mother remained in contact with White despite Enos informing her that "contact with [White] would be detrimental to getting her

---

[6] Respondent-mother denied providing money to White, but text exchanges from the jail logs demonstrated that respondent-mother provided money so that White could call and text her while incarcerated and also showed that respondent-mother planned to pay for White's bond. Respondent-mother and White spent approximately 52 hours on the phone while White was incarcerated. Simultaneously, respondent-mother was unable to meet the financial needs of her children and requested assistance from the DHHS to pay for rent, diapers, and other necessities.

-5-

kids back." Additionally, respondent-mother did not consistently attend counseling, and the counseling that she did attend was not considered successful because she was not honest with the therapist about her relationship with White. Respondent-mother completed a one-time budgeting class but did not complete a one-on-one budgeting class to which she was also referred. Though respondent-mother completed a parenting program, she did not complete any of the domestic-violence programs to which she was referred. Further, her parenting skills declined at visitations, and Enos believed that the children were emotionally harmed during their visits. The foregoing noncompliance with the case service plan justified termination of respondent-mother's parental rights under Subsection (3)(c)(*i*). See *In re Frey*, 297 Mich App at 248.

Further, Enos testified that there was no service that the DHHS could offer respondent-mother in which she would be willing to participate that would rectify the situation in a reasonable amount of time given that respondent-mother was unwilling to participate in a variety of services throughout the case. In combination with the children's young ages, the trial court was justified in finding that respondent-mother would not rectify her issues within a reasonable time. See MCL 712A.19b(3)(c)(*i*); *In re Williams*, 286 Mich App at 273.

Therefore, the trial court did not clearly err by finding that the conditions that led to adjudication—including respondent-mother's violation of the safety plan and her lack of parenting skills—had not meaningfully changed and were unlikely to do so within a reasonable amount of time. Accordingly, based on our review of the record, we are not definitely and firmly convinced that the trial court erred when it found by clear and convincing evidence that termination of respondent-mother's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*).[7]

## B. RESPONDENT-FATHER

Respondent-father argues that the trial court erred by finding that statutory grounds for termination of his parental rights existed under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (3)(c)(*ii*), and (3)(j). We disagree.

As stated, it is undisputed that more than 182 days had elapsed since the initial dispositional order in this case. See MCL 712A.19b(3)(c)(*i*).

The conditions that led to respondent-father's adjudication were respondent-father's parenting skills, lack of stable housing, violation of his probation, and inconsistent drug testing. To rectify these conditions, respondent-father was required to complete a psychological evaluation, individual counseling, parenting classes, and weekly drug screens; attend supportive visitations; and obtain employment.

At the termination hearing, Enos testified that respondent-father completed a psychological evaluation and parenting class. During the period that respondent-father attended in-person

---

[7] Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address respondent-mother's arguments related to MCL 712A.19b(3)(c)(*ii*) and (3)(j). *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334.

visitations, he arrived over 30 minutes late multiple times and had less than a half-hour to spend with MP. Respondent-father did not see MP for approximately a year between February 2024 and February 2025. Respondent-father reengaged with the case and began virtual visitations only after his arrest in early 2025. Respondent-father completed three of the weekly drug tests that he was required to attend. All three drug tests were positive for THC. One test was positive for cocaine and benzos, and missed tests were considered positive. Respondent-father reported to Enos that MP would live with him and his grandmother in the future; however, Enos testified that respondent-father had been kicked out of the house by his grandmother. Enos was never able to verify respondent-father's employment. Respondent-father did not enroll in the Fatherhood Program. Respondent-father completed and returned only half of one chapter of a parenting packet provided by Enos. Finally, respondent-father declined to participate in services offered by the jail while incarcerated because he believed that he did not need them. The foregoing noncompliance with the PATP justified termination of respondent-father's parental rights under Subsection (3)(c)(*i*). See *In re Frey*, 297 Mich App at 248.

Further, Enos believed that respondent-father had "plenty of time" during the case to complete services. In combination with MP's young age, the trial court was justified in finding that respondent-father would not rectify the issues that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c)(*i*); *In re Williams*, 286 Mich App at 273. Accordingly, based on our review of the record, we are not definitely and firmly convinced that the trial court erred when it found by clear and convincing evidence that termination of respondent-father's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*).[8]

## III. BEST INTERESTS OF THE CHILDREN

Next, respondent-mother argues that the trial court erred by finding that termination was in the children's best interests. We disagree.

This Court reviews for clear error a trial court's decision that termination is in a child's best interests. *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.*

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). Whether termination is in the children's best interest must be established by a preponderance of the evidence. *Id.* at 733. The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When determining if termination is in a child's best interests, the trial court may consider the bond between the child and the respondent, the respondent's parenting ability, the child's need for stability and permanency, and the advantages of the child's current placement. *In re Olive/Metts*

---

[8] Because only one statutory ground for termination is necessary, we need not address respondent-father's arguments related to MCL 712A.19b(3)(a)(*ii*), (3)(c)(*ii*), and (3)(j). See *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334.

*Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The trial court may also consider any history of domestic violence, the respondent's compliance with their parent-agency agreement, the respondent's visitation history with the child, the child's well-being in their current placement, and the potential for adoption. *In re White*, 303 Mich App at 714. A best-interests analysis should focus on the child, not the respondent. *In re MJC*, 349 Mich App 42, 62; 27 NW3d 122 (2023). "A child's placement with relatives weighs against termination." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). However, placement with relatives does not preclude termination. *In re Olive/Metts Minors*, 297 Mich App at 43. Generally, it is in a child's best interests to keep siblings together. *Id.* at 42.

Though the trial court acknowledged that respondent-mother was bonded with the children, the trial court properly considered respondent-mother's compliance with her case service plan and the children's need for permanency and stability. See *In re White*, 303 Mich App at 714; *In re Olive/Metts Minors*, 297 Mich App at 41-42. The trial court found no evidence that respondent-mother would benefit from additional services in a reasonable amount of time. Respondent-mother repeatedly violated the safety plan; struggled to maintain housing and employment; failed to participate in the services that she was required to complete; and displayed declining parenting skills. Enos testified that MW and MP were excited to see respondent-mother at visits, but respondent-mother would give the children "half hugs," spent a lot of time on her phone, fell asleep, ignored MW and MP to focus on the youngest child, and would not respond to MW and MP. Enos believed that the children were bonded to respondent-mother, but that she did not reciprocate the bond. In addition, respondent-mother prioritized White's financial needs over her children's needs. The children, who were two and three years old at the time of the termination hearing, had spent a majority of their life in foster care. The children were placed with their maternal grandmother and bonded with their foster family. In light of respondent-mother's noncompliance with her case service plan, the trial court properly concluded that the children's need for permanency and stability supported that termination was in their best interests. See *In re White*, 303 Mich App at 714; *In re Olive/Metts Minors*, 297 Mich App at 41-42.

Respondent-mother argues that the DHHS's and trial court's failure to ask the children's maternal grandmother whether she would be willing to serve as a guardian constituted error warranting reversal. The trial court expressed justified concern that the DHHS did not discuss guardianship with the children's grandmother. *In re Olive/Metts Minors*, 297 Mich App at 42, held that the trial court must address a child's relative placement in its best-interest analysis, but no case suggests that duty extends to questioning the relative caregiver regarding a guardianship. See *In re Mason*, 486 Mich at 164; *In re Olive/Metts Minors*, 297 Mich App at 42. In the present case, the trial court properly addressed whether termination was warranted despite the children's placement with a relative. The trial court noted that guardianship is meant to be short term. The trial court found that termination was in the children's best interests given their ages, their need for permanency and stability, and the lack of evidence that respondent-mother would benefit from any additional services in a reasonable amount of time given her noncompliance. See *In re Olive/Metts Minors*, 297 Mich App at 42. Further, through their grandmother, the children had ongoing contact with their youngest sibling, who was placed in relative care with their grandmother's cousin.

In light of this evidence, we conclude that the trial court did not clearly err by finding that it was in the children's best interests to terminate respondent-mother's parental rights.

## IV. REASONABLE EFFORTS

Finally, respondent-mother argues that the trial court erred by finding that the DHHS made reasonable efforts toward reunification. We disagree.

In order to preserve an argument regarding reasonable reunification efforts, a respondent must object to the services at the time that they are offered. *In re Frey*, 297 Mich App at 247. "The time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." *Id.*, quoting *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *In re Atchley*, 341 Mich App at 337. Respondent-mother did not challenge the adequacy of her services at any point during the proceeding. At a continued review and permanency-planning hearing in February 2024, respondent-mother testified that she had done or was working on everything that she was asked to do and did not believe that she needed additional services. Therefore, the issue is not preserved. See *id.*

We review unpreserved issues arising in a termination hearing for "plain error affecting substantial rights." *In re MJC*, 349 Mich App at 47. To establish plain error, the party asserting error must show that (1) the error occurred, (2) "the error was plain, i.e., clear or obvious," and (3) the error affected the respondent's substantial rights. *Id.* at 48. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* (quotation marks and citation omitted).

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)," *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019), none of which were raised by the DHHS in the present case. As part of its duty to make reasonable efforts, "the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). Although "the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. When "services were proffered, but [the] respondents failed to either participate or demonstrate that they sufficiently benefited from the services provided," the DHHS discharges its duty to make reasonable efforts, though its efforts were unsuccessful. *Id.*

In the present case, the DHHS provided respondent-mother with supervised and unsupervised parenting time, safety planning, supportive-visitation referrals, a psychological evaluation, individual counseling at Summit Pointe, parenting classes at Woman's Co-op, a Goodwill budgeting-assistance referral, a domestic-violence class at Wings of a Dove, parenting aid at Wings of a Dove, housing resources, a referral to Safe Place, and gas cards. Notably, the DHHS provided multiple referrals to two different agencies for domestic-violence services. Enos testified that she had exhausted all potential services to assist respondent-mother. Enos noted that respondent-mother's unwillingness to fully participate in services had been a challenge throughout the case.

Respondent-mother argues that the DHHS failed to provide her with rent assistance despite her struggles with housing. Enos testified that respondent-mother was provided with housing resources, and respondent-mother utilized Section 8 housing at the start of the case. Such external resources were sufficient to discharge the DHHS's duty. See *In re Trejo*, 462 Mich 341, 358; 612 NW2d 407 (2000).

Respondent-mother next argues that the DHHS failed to provide and adjust domestic-violence services. However, respondent-mother was referred to multiple domestic-violence programs. She was first referred to the Wings of a Dove domestic-violence program in April 2024. Respondent-mother completed an initial assessment but never returned and was discharged. After the waiting period, respondent-mother was referred to the program again and started sessions in September 2024 but was again discharged in March 2025 for lack of participation and benefit. When respondent-mother was discharged from Wings of a Dove for the second time, Enos referred her to Safe Place as an alternative. Respondent-mother informed Safe Place that she was not in a domestic-violence situation and that she would not reach out to them in the future. After the waiting period, Enos referred respondent-mother to the Wings of a Dove program for a third time in June 2025. Respondent-mother had a corresponding duty to participate in the services that were offered by the DHHS, and the ultimate unsuccessfulness of these services did not equate with failure by the DHHS to make reasonable efforts. See *In re Frey*, 297 Mich App at 248.

Finally, respondent-mother cites *In re Hicks/Brown*, 500 Mich at 89-90, to support her argument that her services should have been more tailored to her situation. Respondent-mother argues that because she was pregnant with White's child, it was unreasonable to exclude White from her and the children's lives. However, *In re Hicks/Brown*, 500 Mich at 86, 90, requires the DHHS to adjust its services to accommodate a parent's disability under the Americans with Disabilities Act, 42 USC 12101 *et seq*. Respondent-mother did not suggest in the record or on appeal that her issues completing services resulted from a disability.

For the foregoing reasons, it was not plain error for the trial court to conclude that the DHHS demonstrated reasonable efforts to facilitate reunification of respondent-mother and the children. See *id*. at 85; *In re MJC*, 349 Mich App at 47.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica